NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KERRI COLICCHIO, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> MERCK & CO., INC. et al., : <br> : <br> Defendants. : | Civil Action No. 08-3593 (SRC) <br><br> OPINION |

**CHESLER, U.S.D.J.**

This matter comes before the Court on two motions for summary judgment, pursuant to FED. R. CIV. P. 56: 1) the motion by Defendants Merck & Co., Inc. ("Merck"), J. Chris Scalet ("Scalet"), and Laurel LaBauve ("LaBauve") (collectively, "Defendants"); and 2) the cross-motion by Plaintiff Kerri Colicchio ("Colicchio"). For the reasons set forth below, Defendants' motion will be granted in part and denied in part, and Plaintiff's cross-motion for summary judgment will be denied.

**BACKGROUND**

This case arises out of an employment dispute. Plaintiff Kerri Colicchio was first employed by Merck in 1988. During her career at Merck, Colicchio had taken two maternity leaves and, in 2006, took a third maternity leave. Colicchio alleges that, on her return to Merck, she was stripped of her job responsibilities and, in 2007, was terminated. Plaintiff filed a Complaint which asserted five counts: 1) employment discrimination by reason of pregnancy in violation of New Jersey's Law Against Discrimination ("NJLAD"); 2) employment

discrimination by reason of gender in violation of NJLAD; 3) retaliation for activity protected by NJLAD; 4) violation of rights under the New Jersey Family Leave Act ("FLA"); and 5) violation of rights under the Family and Medical Leave Act ("FMLA").  Defendants have moved for summary judgment on all counts in the Complaint, and Plaintiff has cross-moved for summary judgment as to her interference claims under FLA and FMLA.

## LEGAL STANDARD

**I.    Summary Judgment**

Summary judgment is appropriate under FED. R. CIV. P. 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).  "[W]ith

respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

**II.     Employment Discrimination: Disparate Treatment Claims**

Generally, disparate treatment[1] claims for employment discrimination under federal law are analyzed by application of the McDonnell Douglas test:

> The Court in *McDonnell Douglas* set forth a burden-shifting scheme for discriminatory-treatment cases.  Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual.  The Courts of Appeals have consistently utilized this burden-shifting approach when reviewing motions for summary judgment in disparate-treatment cases.

Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003) (citations omitted).  The New Jersey Supreme Court has adopted the McDonnell Douglas test for most employment discrimination claims.  Victor v. State, 203 N.J. 383, 408 (2010).

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason" for the employer's action.  McDonnell Douglas, 411 U.S. 792, 802 (1973).  The employer may satisfy the burden by introducing evidence which, taken as true, would allow the factfinder to conclude that there was a nondiscriminatory reason for the unfavorable employment decision.  St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).  The employer need not prove that the tendered reason actually motivated the decision.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  The burden of proving intent remains with the Plaintiff.  Id.

---

[1] A disparate treatment case is one in which the employer intentionally treats some people less favorably than others because of their membership in a protected class.  See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).

If the defendant employer satisfies the burden, then "the plaintiff must 'submit evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Fakete v. Aetna, 308 F.3d 335, 338 n.3 (3d Cir. 2002). The plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow the factfinder to infer that each of the employer's proffered nondiscriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

At this stage, the burden has shifted back to the plaintiff, and the plaintiff must show, by a preponderance of the evidence, that the employer's explanation is pretextual. Id. "The test is whether the plaintiff ultimately persuades the factfinder that the employment decision was caused by bias" and that the real reason for the employer's adverse employment decision is discrimination. Id.

## DISCUSSION

**I.   Defendants' motion for summary judgment**

Defendants move for summary judgment on the First and Second Counts in the Complaint, which assert employment discrimination in violation of NJLAD by reason of Plaintiff's pregnancy and gender. In moving, Defendants distinguish between two kinds of NJLAD violations: the failure to promote to the position of Vice President of Global OE, and wrongful discharge. In opposition, Plaintiff summarizes the NJLAD claims as follows: "Plaintiff alleges that defendants discriminated against her in violation of the New Jersey Law Against Discrimination . . . on the basis of pregnancy and gender by dismantling her career,

5

placing no more qualified individuals into available Grade 3 positions, and then terminating her for pretextual reasons." (Pl.'s Opp. Br. 13.)  Plaintiff thus complains of employment discrimination manifested in three kinds of adverse actions: dismantling her career, not hiring her for available Grade 3 positions, and terminating her.

 Defendants object that the Grade 3 position failure to hire claim is newly asserted, appearing for the first time in this case in Plaintiff's summary judgment brief.  It is true that the Complaint does not assert a claim for failure to hire for Grade 3 positions.  The Complaint alleges that Plaintiff was not hired for the Interim Vice President of Global OE position, nor for the Vice President of Global OE position, but does not assert that Plaintiff was not hired or not promoted for any other position.  Plaintiff has expressly abandoned any claim for failure to hire for any position other than the Vice President of Global OE position.  (Pl.'s Opp. Br. 65 n.9.)  Thus, this Court recognizes only three adverse employment actions in considering the claims under the First and Second Counts for violation of NJLAD: 1) the changes in job responsibilities imposed after Plaintiff returned from her third maternity leave; 2) her termination; and 3) the failure to hire/promote to the position of Vice President of Global OE.

 Defendants have not moved for summary judgment on Plaintiff's claims that she suffered adverse employment actions manifested in the changes in job responsibilities imposed after she returned from her third maternity leave.  That theory is therefore not at issue on this motion.  As to the NJLAD discrimination claims, that leaves two kinds of adverse employment actions at issue on this motion: Plaintiff's termination, and the failure to hire her for the Vice President of Global OE position.

A.  NJLAD: termination

Defendants move for summary judgment on Plaintiff's claim that her termination was due to unlawful discrimination, in violation of NJLAD, on three grounds: 1) Plaintiff cannot establish a *prima facie* case; 2) the termination was based on legitimate and non-discriminatory reasons; and 3) Plaintiff cannot show that these reasons are a pretext for illegal discrimination.

"The evidentiary burden at the prima facie stage is rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent – i.e., that discrimination could be a reason for the employer's action." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005) (citation omitted). Defendants contend that Plaintiff cannot meet this modest burden. Yet Plaintiff has easily done so.

Defendants' briefing relies upon an overly constricted view of Plaintiff's case, that Plaintiff complains of discriminatory termination and failure to promote. This narrow view eliminates from consideration one of Plaintiff's main points and makes Plaintiff's case seem meritless, since Merck continued to employ Plaintiff for about a year after her third pregnancy leave, thus weakening any inferences based on the timing of the leave and the adverse employment action. Defendants fail to come to grips with the main theory of Plaintiff's case, which is: 1) just prior to her third pregnancy leave, Plaintiff's supervisor made statements indicating discriminatory animus; 2) during the third pregnancy leave, Plaintiff's supervisor decided to terminate her based on this discriminatory animus; 3) after Plaintiff returned, Plaintiff's supervisor executed a plan which stripped Plaintiff of many of her job duties and set her up for her eventual termination; and 4) Plaintiff was eventually terminated. Plaintiff's termination case thus incorporates her claim regarding the changes in job responsibilities after

her return from her third maternity leave.

Plaintiff offers a large volume of evidence to support this theory, but the most relevant evidence may be summarized as follows. Plaintiff points to: 1) evidence regarding her supervisor's statements during the February 15, 2006 meeting; 2) evidence regarding changed job responsibilities after the third pregnancy leave; and 3) evidence regarding timing.

As to the February 15, 2006 meeting with Scalet, Plaintiff points to her interrogatory statement about a conversation with Scalet during her third pregnancy, in which Scalet "said that she would have been chosen [for promotion] except for her upcoming maternity leave."[2] (Pl.'s Ans. to Defs.' First Interrog. ¶ 7.) The interrogatory also states that Scalet "repeatedly complained about the six month length of her leave at her level." (Id.) Plaintiff states that Scalet discouraged her from returning to work after maternity leave, saying, "babies need their mamas." (Id.) A reasonable jury could infer discriminatory animus from this evidence.

As to the evidence that, immediately upon her return from her third maternity leave, a number of job responsibilities were taken away from her, Plaintiff points to her deposition testimony. (Colicchio Dep. 81:4-82:6.) Defendants have not raised the issue of whether the definition of adverse employment action under the NJLAD includes the kind of stripping of job responsibilities that Plaintiff alleges. Such action is certainly actionable under Title VII.

---

[2] While this might appear to be a smoking gun statement, it is not. According to the interrogatory, this statement was in regard to the position of Interim VP Global OE position, and not the VP Global OE position. As Defendants note, Plaintiff has expressly abandoned any claim for failure to hire for the Interim VP Global OE position, and the claim for failure to promote concerns only the VP Global OE position. Nonetheless, this evidence is probative of the proposition that Scalet considered Plaintiff's maternity leave to be an important factor in making decisions about her employment – and, more importantly, a negative factor.

Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.") Defendants have not argued that Plaintiff's allegations regarding changed job responsibilities after coming back from the third pregnancy leave are not actionable under NJLAD, and have waived this argument. A reasonable jury, hearing this evidence, could infer that Plaintiff suffered significant adverse employment actions upon her return from her third maternity leave.

This same evidence also supports inferences as to timing: discriminatory animus was expressed prior to the third maternity leave, adverse employment action occurred immediately after return from maternity leave, and this process led to Plaintiff's eventual termination. Defendants try to treat the maternity leave and the termination as remote in time, but, under Plaintiff's theory, they are temporally linked by the intervening process of changing her job responsibilities. The evidence indeed supports an inference that, as Plaintiff contends, Merck set her up for her eventual termination by gradually stripping her of her job responsibilities. The proffered evidence is sufficient to allow a reasonable jury to conclude that Plaintiff suffered an adverse employment action motivated by discriminatory animus related to the maternity leave. This is sufficient, at this stage, to defeat the motion for summary judgment regarding employment discrimination based on both pregnancy and gender.[3]

A reasonable finder of fact, crediting this evidence and making every reasonable

---

[3] The inferences as to pregnancy are quite direct. The inferences as to gender are more indirect but, since only women get pregnant, the evidence is sufficient at this stage to merit presenting the gender discrimination case to the jury.

inference in favor of Plaintiff, as the law of summary judgment requires, could easily conclude that Plaintiff's factual scenario is compatible with discriminatory intent. As noted, the New Jersey Supreme Court considers the evidentiary burden at the *prima facie* stage to be modest, and Plaintiff has pointed to evidence sufficient to meet this burden.

Following the McDonnell Douglas paradigm, the burden then shifts to Defendants, who contend that Plaintiff was terminated for a legitimate non-discriminatory reason, a business reorganization. The burden then shifts back to the Plaintiff, who must, at summary judgment, point to evidence sufficient to persuade a reasonable factfinder that the proffered reason is pretextual.

As Plaintiff contends, the Third Circuit has established the following legal standard for this issue:

> This basic framework under Title VII illustrates that, to defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Fuentes, 32 F.3d at 764. Plaintiff's proffered evidence has already been reviewed. This Court finds that, for the reasons already discussed, Plaintiff has pointed to evidence which could persuade a reasonable factfinder to disbelieve Defendants' articulated reasons.

In sum, Plaintiff has pointed to evidence which, taken as true, is sufficient evidence from which a factfinder could both find that the modest requirements of a *prima facie* case have been satisfied, as well as disbelieve the employer's articulated legitimate reason for the termination. While the proffered evidence evidence expressly concerns pregnancy, that sufficiently implies

gender that these claims of discrimination on the basis of pregacy and on the basis of gender both remain in the case. As to her claims for employment discrimination in the First and Second Counts of the Complaint, Plaintiff has raised a factual dispute sufficient to defeat the motion for summary judgment as to the claim of discriminatory termination, in violation of the NJLAD.

B.   NJLAD: failure to promote/hire

As to the claim that Defendants failed to hire/promote Plaintiff to the position of Vice President of Global OE, Defendants make three arguments: 1) Plaintiff cannot establish a *prima facie* case; 2) Defendants can articulate a legitimate, non-discriminatory reason; and 3) Plaintiff has no evidence that this reason is pretextual.

The Third Circuit has articulated the requirements of a *prima facie* case for failure to hire as follows:

> To establish a prima facie case for relief in an employment discrimination case alleging a failure to hire, an applicant must establish that: (1) he belongs to the protected category; (2) he applied for and was qualified for a position for which the covered employer was seeking applicants; (3) despite his qualifications, he was not hired; and (4) after his rejection, the position remained open, or was filled in a manner giving rise to an inference of discrimination.

Still v. Shinseki, 2012 U.S. App. LEXIS 15232, *4-*5 (3d Cir. July 24, 2012) (citing Olson v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996)).

As to the *prima facie* case, Defendants argue only that Plaintiff cannot establish a *prima facie* case because they decided to consider no candidates internal to Merck. Defendants have failed to show that this has any relevance to the legal requirements for making out a *prima facie* case. Defendants have failed to raise any relevant objection to Plaintiff's *prima facie* case.

Rather than relating to the *prima facie* case, Defendants' contention that Merck decided

11

to consider only external candidates goes to the legitimate, non-discriminatory reason for not hiring Plaintiff for the position. For the purpose of this motion only, this Court finds that Defendants have failed to meet their burden of articulating a legitimate reason for not hiring Plaintiff: as Plaintiff responds in opposition, in essence, how is this, as articulated, a legitimate reason for not hiring her? As expressed in Defendants' brief, this explanation is barely more than no reason at all. Defendants have failed to articulate why they decided not to consider internal candidates like Plaintiff. No reasonable finder of fact could conclude that Merck has articulated a legitimate, non-discriminatory reason for not hiring Plaintiff for this position.

Furthermore, Plaintiff has pointed to evidence that she was not only considered for the position of Interim Vice President of Global OE, but that she would have gotten it but for her maternity leave. This is sufficiently powerful evidence that she was qualified for the Vice President of Global OE position, and that the articulated reason – the mysterious exclusion of internal candidates – is a pretext for illegal discrimination, that this claim should go to the jury.

As to the claim of discriminatory failure to hire her for the Vice President of Global OE position, Defendants have failed to articulate a legitimate, non-discriminatory reason for not hiring Plaintiff for this position. As such, they have failed to show that they are entitled to judgment as a matter of law. As to this claim, Defendants' motion for summary judgment will be denied.

    C.    NJLAD: retaliatory termination

Defendants move for summary judgment on the Third Count, alleging retaliation for activity protected by the NJLAD. Defendants make three arguments: 1) Plaintiff cannot establish a *prima facie* case; 2) Defendants can articulate a legitimate, non-discriminatory reason;

and 3) Plaintiff has no evidence that this reason is pretextual.

The New Jersey Supreme Court has set forth the following requirements for retaliation claims under the NJLAD:

> To establish a prima facie case of discriminatory retaliation, plaintiffs must demonstrate that: (1) they engaged in a protected activity known by the employer; (2) thereafter their employer unlawfully retaliated against them; and (3) their participation in the protected activity caused the retaliation.

Craig v. Suburban Cablevision, 140 N.J. 623, 629-630 (1995). Defendants argue, *inter alia*, that Plaintiff has no evidence that she engaged in activity protected by the NJLAD.

Plaintiff contends that she made complaints to Defendants which qualify as protected activity. The Third Circuit uses the following principles to determine whether complaints qualify as activity protected by NJLAD:

> First, case law has established that opposition to an illegal employment practice must identify the employer and the practice - if not specifically, at least by context. For example, in *Barber v. CSX Distribution Services*, 68 F.3d 694, 701-02 (3d Cir. 1995), we held that a letter to an employer's Human Resources Department was not protected activity because it did not specifically complain about age discrimination. The letter, which stated that the plaintiff felt that the position was given to a less qualified person, was too vague to constitute opposition to an unlawful employment practice of his employer because it neither "explicitly or implicitly" alleged that a protected characteristic was the basis for the adverse employment action.

Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130 (3d Cir. 2006). Thus, to qualify for protection, a complaint must explicitly or implicitly allege that a protected characteristic was the basis for the adverse employment action.

Plaintiff's opposition brief does not point to any evidence of any activity that satisfies this test. Plaintiff's brief cites the evidence as follows: "PSOF ¶¶ 109-113, 150-162, 311, 445-472, 526-529 & Exhibits; PoppDSOF, ¶ 113." (Pl.'s Opp. Br. 77.) None of these points to evidence

13

of qualifying protected activity. Paragraphs 109 through 113 concern Plaintiff's meeting with Scalet on February 15, 2006. Nothing in the factual statements or in the underlying evidence shows that Plaintiff complained of an adverse action on the basis of pregnancy or gender. Plaintiff's answer to interrogatory No. 7, describing that meeting, does not show that Plaintiff made any complaints about adverse employment actions. (Ex. 35 at 14.) Nor does the cited deposition testimony describe any such complaints. (Colicchio Dep. pp. 142-143, 185-186.)

Paragraphs 150 through 162 concern Plaintiff's 2005 year-end review, which she received in March of 2006, and her response to that review. Nothing in the factual statements or in the underlying evidence shows that Plaintiff complained of an adverse action on the basis of pregnancy or gender. The factual statements cite a March 15, 2006 email from Plaintiff to Scalet. The copy of the email in evidence shows no complaints of adverse action on the basis of pregnancy or gender. (Ex. 6.) Nor does the cited deposition testimony describe any such complaints. (Colicchio Dep. pp. 133-137.)

Paragraph 311 concerns complaints to LaBauve. Nothing in the factual statements or in the underlying evidence shows that Plaintiff complained of an adverse action on the basis of pregnancy or gender. The cited deposition testimony does not describe any such complaints. (Colicchio Dep. pp. 169-178.) The deposition testimony describes complaints about her treatment by Defendants, but does not explicitly or implicitly state that she received this treatment because of a protected characteristic.

Paragraphs 445 through 472 concern Plaintiff's 2006 year-end review and her response to that review. Nothing in the factual statements or in the underlying evidence shows that Plaintiff complained of an adverse action on the basis of pregnancy or gender. Plaintiff cites to her

answer to interrogatory no. 11, concerning a "dialogue with Human Resources" that began in the Fall of 2006. (PSOF ¶ 445.) Nothing in the interrogatory answer shows that, in this dialog, Plaintiff explicitly or implicitly stated that she received adverse treatment because of a protected characteristic. Plaintiff cites to an email she sent Mirian Graddick-Weir on March 8, 2007, which complains of harassment, but does not explicitly or implicitly refer to pregnancy or gender. (Ex. 79.) Plaintiff cites to a summary of employment difficulties to review with managers. (Ex. 80.) This summary is quite articulate and detailed about adverse actions Plaintiff experienced at work but, other than noting that these problems started after she returned from maternity leave, nothing explicitly or implicitly indicates that she received adverse treatment because of a protected characteristic. Nor does the cited deposition testimony, nor the other documents cited, describe any such complaints. (Colicchio Dep. pp. 223[4], 235-237, 239-248, 256-260; Exs. 10, 68, 81, 82, 83, 84, 85.)

Paragraphs 526 through 529 concern Plaintiff's complaints about the changing requirements for her Black Belt Certification. Nothing in the factual statements or in the underlying evidence shows that Plaintiff complained of an adverse action on the basis of pregnancy or gender. Nor does the cited deposition testimony, nor the other documents cited, describe any such complaints. (Colicchio Dep. p. 273; Exs. 10, 35, 89.) While the cited deposition testimony does mention a "pattern of discrimination," Plaintiff does not assert in that testimony that this pattern is based on pregnancy or gender. (Colicchio Dep. p. 273.)

Similarly, Plaintiff's deposition testimony that she complained to Joe Morrisey about

---

[4] This deposition testimony describes a statement about the timing of hostility, which occurred in time after Plaintiff's return from maternity leave. It does not describe a complaint about hostility in response to or about Plaintiff's maternity leave.

15

discrimination makes no reference, explicitly or implicitly, to pregnancy or gender. (Colicchio Dep. p. 90-91.)

In sum, Plaintiff has cited ample evidence that she complained about the treatment she received at work. None of this evidence indicates that she complained that she was being discriminated against based on her pregnancy or her gender.

No reasonable finder of fact could conclude from this cited evidence that Plaintiff made any complaints to Defendants that explicitly or implicitly alleged that a protected characteristic was the basis for an adverse employment action. Plaintiff has failed to satisfy the requirements for making out a *prima facie* case of retaliation under the NJLAD. As to the Third Count, Defendants' motion for summary judgment will be granted.

D. The FMLA and FLA claims

Defendants move for summary judgment on the Fourth and Fifth Counts, for violation of the New Jersey Family Leave Act ("FLA") and Family and Medical Leave Act ("FMLA"). Defendants move for summary judgment on both an interference theory and a retaliation theory. The Third Circuit has differentiated these theories as follows:

> The two theories of recovery available under the FMLA require proof of different elements. To prove an interference claim, a plaintiff must show (1) that he was entitled to benefits under the FMLA and (2) that his employer illegitimately prevented him from obtaining those benefits. To prove a retaliation claim, a plaintiff must show that (1) he invoked his right to FMLA benefits, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his invocation of his rights.

Hayduk v. City of Johnstown, 386 Fed. Appx. 55, 59-60 (3d Cir. 2010).

In response, Plaintiff has cross-moved for summary judgment only on the interference theory. Plaintiff has not opposed Defendants' motion for summary judgment on the retaliation

16

theory, and, as to Plaintiff's claims for retaliation in violation of FLA and FMLA, Defendant's motion for summary judgment will be granted.

As to the interference theory, "[i]n order to assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir. 2007). Defendants contend that Plaintiff has no evidence that Defendants denied her benefits under either law to which she was entitled.

As noted, Plaintiff opposes this and has cross-moved for summary judgment for interference under the FLA and FMLA. Plaintiff points to the following provisions in the FMLA:

> (a) Restoration to position.
>   (1) In general. Except as provided in subsection (b), any eligible employee who takes leave under section 102 [29 USCS § 2612] for the intended purpose of the leave shall be entitled, on return from such leave--
>     (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
>     (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614. It is clear, at this juncture, that there are factual disputes over whether Plaintiff was restored to an equivalent position with equivalent terms and conditions of employment. This is a matter for the jury. As to the claims of FLA and FMLA interference, both Defendant's motion and Plaintiff's cross-motion will be denied.

The Court notes that Defendants' reply brief raises a new argument in support of their motion for summary judgment: as a matter of law, once a person's leave exceeds 12 weeks, the statutory protection for job restoration ceases. This is a new argument on reply; Defendants did

not raise it in their moving papers.  As a matter of procedure, this Court will not accept arguments offered for the first time in the reply brief, as they were not properly asserted in the opening brief and Plaintiff has not had the opportunity to respond to them.  <u>Anspach v. City of Philadelphia</u>, 503 F.3d 256, 258 n.1 (3d Cir. 2007) ("failure to raise an argument in one's opening brief waives it").  The Court will not reach this argument on these motions.

  E. NJLAD aiding and abetting

Defendants move for summary judgment as to liability against the individual defendants under the NJLAD, contending that "an individual accused of alleged discriminatory acts cannot be held liable under the aiding-and-abetting theory."  (Defs.' Br. 33.)  This argument, while not unreasonable, cannot succeed, given the New Jersey Supreme Court's decision in <u>Cicchetti v. Morris County Sheriff's Office</u>, 194 N.J. 563, 595 (2008).  In <u>Cicchetti</u>, the New Jersey Supreme Court accepted as viable the theory that the supervisors accused of being the principal discriminators could be held individually liable as aiders or abettors.  <u>Id.</u>  The Court held that such a theory could succeed if the plaintiff proved their active and purposeful conduct.  <u>Id.</u> Given the analysis in <u>Cicchetti</u>, Defendants' argument that a principal wrongdoer cannot aid and abet his own wrongful conduct misses the mark.  As to this point, the motion for summary judgment will be denied.

  F. Punitive damages

Defendants move for summary judgment on the availability of an award for punitive damages, contending that Plaintiff cannot demonstrate conduct that meets the legal standard for such damages.  The parties agree that such damages are available only where a plaintiff has demonstrated that a defendant's behavior was particularly egregious.  Given that this Court has

18

decided that many issues of Defendants' alleged discriminatory and retaliatory conduct should go to the jury, there is no reason at this juncture to bar the jury from considering an award of punitive damages.  As to this issue, Defendants' motion for summary judgment will be denied.

## CONCLUSION

Plaintiff's cross-motion for summary judgment is denied.  Defendants' motion for summary judgment is granted in part and denied in part.  Summary judgment in favor of Defendants is granted on two issues: 1) Plaintiff's claims of retaliation, in violation of NJLAD; and 2) Plaintiff's claims of retaliation, in violation of FLA and FMLA.  As to all other issues, Defendants' motion for summary judgment is denied.

      s/ Stanley R. Chesler  
      STANLEY R. CHESLER, U.S.D.J.

Dated: November 16, 2012